UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Food Employers Labor Relations
Association and United Food and Commercial
Workers Pension Fund,

        Appellant,

                                           13 Civ. 5815 (NSR) (LMS)

       - against -                              **Memorandum & Order**

The Great Atlantic & Pacific Tea Company,
Inc. et al.,

        Appellees.
------------------------------------------------------------X

**NELSON S. ROMÁN, United States District Judge:**

    Appellant the Food Employers Labor Relations Association and United Food and Commercial Workers Pension Fund ("FELRA") or ("Appellant") appeals the Bankruptcy Court's order denying FELRA's administrative claim. FELRA seeks to recover an administrative claim for withdrawal liability of $7,219,172 out of the total withdrawal liability of $77,420,079 owed by the Great Atlantic & Pacific Tea Company, Inc. and its 53 affiliates ("A&P") or ("Appellee") or ("Debtors") under the Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001, et seq. ("ERISA"). FELRA's administrative claim is based on the portion of A&P's total $77,420,079 in withdrawal liability that is attributable to the 13-month time period during which A&P continued to operate and participate in FELRA after the filing for bankruptcy.

    Appellee opposes this appeal, pointing out that Second Circuit precedent supports the Bankruptcy Court's decision.

1

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/8/2014

## II. FACTS

FELRA is a multiemployer defined benefit pension plan established pursuant to Section 302(c) of the Labor Management Relations Act and is subject to ERISA. (Declaration of Bill Jensen, Bankruptcy Document Number ("B.D.N.") 3240-1 ("Jensen Decl."), ¶ 3; Stipulation of Undisputed Facts, B.D.N. 4251 ("Stip."), ¶ 3.) FELRA's purpose is to provide pension, retirement, and related benefits to the eligible employees of the participating employers. (Jensen Decl. ¶ 3.) A multiemployer defined benefit plan creates a framework in which the contributions of all the participating employers are placed in a single pooled trust, for the benefit of all participants and beneficiaries of the plan. *See* ERISA Sections 302, 304; 29 U.S.C. §§ 1082, 1084.

A&P filed for relief under Chapter 11 of Title 11 of the United States Code ("Chapter 11"), as amended, on December 12, 2010 (the "Petition Date"). (B.D.N. 1.) On June 14, 2011, FELRA timely filed a proof of claim for contingent withdrawal liability (Claims Register, Proof of Claim No. 5277), which it subsequently amended to reflect a total withdrawal liability amount of $77,420,079 based on A&P's complete withdrawal on January 31, 2012. (*Id.*) On April 11, 2012, FELRA filed a motion for payment of an administrative expense claim for the portion of A&P's withdrawal liability attributable to the post-petition time period. (B.D.N. 3628, the "Motion"). On May 15, 2012, A&P filed an objection to the Motion. (B.D.N. 3775.) On July 24, 2012, FELRA filed a reply. (B.D.N. 3890.) Upon receiving the final calculation of A&P's withdrawal liability, FELRA supplemented the Motion to reflect an administrative claim of $7,219,172. (B.D.N. 4106.)

On June 13, 2013, FELRA and A&P each filed supplemental briefs regarding the Motion. (B.D.N. 4243, 4244.) On June 27, 2013, the Bankruptcy Court held an evidentiary hearing on the

Motion. (*See* Transcript of June 27, 2013 evidentiary hearing, B.D.N. 4271 ("Tr.").) At the conclusion of the evidentiary hearing, the Bankruptcy Court denied the Motion for the reasons stated on the record at the hearing. (Tr. at 84:13-19.) On July 2, 2013, the Bankruptcy Court entered its Order denying FELRA's Motion. (B.D.N. 4259.) On August 19, 2013, Appellant filed this appeal.

### III. LEGAL STANDARD

This Court has jurisdiction to hear appeals from decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals ... from final judgments, orders, and decrees; ... [and,] with leave of court, from other interlocutory orders and decrees ... of bankruptcy judges." 28 U.S.C. § 158(a); *In re Hostess Brand, Inc.*, 499 B.R. 406, 411 (S.D.N.Y. 2013).

A district court "acts as the first level of appellate review for orders from the bankruptcy court. On appeal, the court may 'affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings.'" *Lear Corp. v. LaCava* (*In re Lear Corp.*), No. 12–CV–2626, 2012 WL 5438929, at *1 (S.D.N.Y. Nov. 5, 2012) (citation omitted). A district court reviews a bankruptcy court's legal rulings de novo. *Id.*; *Pal Family Trust v. Ticor Title Ins.*, 490 B.R. 480, 485 (S.D.N.Y. 2013). "When reviewing a bankruptcy court's findings of fact, [however,] a district court reviews for clear error only and accepts its factual findings unless they are clearly erroneous." *Economic Dev. Growth Enters. Corp. v. McDermott,* 478 B.R. 123, 127 (N.D.N.Y. 2012); *see also COR Route 5 Co. v. The Penn Traffic Co.* (*In re The Penn Traffic Co.*), 524 F.3d 373, 378 (2d Cir. 2008) ("[T]he factual determinations of the Bankruptcy Court in this core proceeding are reviewed for clear error.").

### IV. DISCUSSION

**A. The Bankruptcy Court Properly Denied the Administrative Expense Motion**

"The case law governing the grant of an administrative expense is well-established in the Second Circuit." *In re Hostess Brand, Inc.*, 499 B.R. 406, 411 (S.D.N.Y. 2013). Section 507 of the Bankruptcy Code gives first priority to "administrative expenses allowed under [11 U.S.C.] section 503(b)," defined as including "the actual, necessary costs and expenses of preserving the estate, including wages, salaries or commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A). "[A]n expense is administrative only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor in possession, and only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business." *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98, 101 (2d Cir. 1986) (citations and quotations omitted). "A debt is not entitled to priority simply because the right to payment arises after the debtor-in-possession has begun managing the estate;" rather, there must be a post-petition transaction between the claimant and the debtor-in-possession and the consideration supporting the right to payment must have been both supplied to and beneficial to the debtor-in-possession in the operation of its business post-petition. *Id.*; *In re Hostess Brand, Inc.*, 499 B.R. 406, 411 (S.D.N.Y. 2013). "Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed." *McFarlin's,* 789 F.2d at 100; *see also In re A.C.E. Elevator Co., Inc.,* 347 B.R. 473 (Bankr. S.D.N.Y. 2006); *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey,* 160 B.R. 882, 889–90 (Bankr. S.D.N.Y. 1993); *In re Drexel Burnham Lambert Group Inc.,* 134 B.R. 482, 488 (Bankr. S.D.N.Y. 1991). "The burden of proving entitlement to priority

payment as an administrative expense ... rests with the party requesting it." *In re Bethlehem Steel Corp.,* 479 F.3d 167, 172 (2d Cir. 2007) (citations omitted).

The Multiemployer Pension Plan Amendments Act ("MPPAA") provides that an employer that withdraws from a multiemployer plan is liable in an amount to be determined under 29 U.S.C. § 1391 for "withdrawal liability." 29 U.S.C. § 1381(a). "Withdrawal liability" describes an employer's obligation, upon his withdrawing from a multiemployer plan requiring him to make periodic payments toward employees' insurance and pensions, to make a lump sum payment of additional money to the fund. *McFarlin's, Inc.,* 789 F.2d at 99. "This payment is required to satisfy the employer's pro rata share of the vested but unfunded benefits to be paid to employees participating in the plan, including those employed by others." *Id.* In the context of bankruptcy priorities, withdrawal liability may be considered an administrative expense, but "only if it arises out of a transaction between the creditor and the ... debtor in possession and only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business." *In re Klein Sleep Products, Inc.,* 78 F.3d 18, 24–25 (2d Cir. 1996) (citing *McFarlin's,* 789 F.2d at 101) (quotations omitted). Otherwise, "withdrawal liability" will be deemed a general unsecured claim. 789 F.2d at 99–104; *In re Hostess Brand, Inc.*, 499 B.R. at 412.

Appellant appeals the Bankruptcy Court's June 27, 2013 decision denying FELRA's claim for payment of a portion of the withdrawal liability incurred by A&P as an administrative expense. Appellant asserts that the Bankruptcy Court's decision to apply the Bankruptcy Code to the exclusion of ERISA is incorrect as a matter of law. (Appellant Br. at 14.) Appellant argues that the Bankruptcy Court incorrectly concluded that it is not bound by ERISA in evaluating FELRA's Motion, and thus rejected FELRA's method of calculating its administrative claim.

(Tr. at 82:6.) Appellant states: "there is no binding authority explaining how to calculate the claim." (Appellant Br. at 10.)

A&P argues that the Bankruptcy Code does not permit FERLA to obtain administrative priority for unfunded liabilities that accrued prior to A&P's bankruptcy, "as confirmed by two Second Circuit cases that specifically address when, if ever, all or part of a claim for ERISA withdrawal liability could conceivably be entitled to administrative priority under the Bankruptcy Code." (Appellee Br. at 1 citing *Trs. of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986); *Supplee v. Bethlehem Steel Corp.* (*In re Bethlehem Steel Corp.*), 479 F.3d 167, 172-73 (2d Cir. 2007) (Sotomayor, J.) (discussing *McFarlin's*).) Relying on *McFarlin's* and *Bethlehem Steel*, the Bankruptcy Court held that FERLRA's argument to include unfunded benefits that had accrued long before a bankruptcy filing in an administrative claim was "not consistent with Second Circuit case law." (Appellees' Br. Appendix, Hr'g Tr. June 27, 2013 [Bankr. Dkt. No. 4271] 51:20-23.)

A&P paid every dollar it was required to pay FERLA during its bankruptcy case. (Appellee Br. at 2 citing FERLA App. Br. at p. 6, ¶ 16.) On February 1, 2012, A&P entered into an agreement with one of its unions, UFCW Local 27, that completely eliminated A&Ps' obligations to contribute to FELRA. (Appellee Br. at 2.) This agreement effectuated a complete withdrawal from FELRA. (Appellee Br. at 2 citing ERISA § 4203(a), 29 U.S.C. § 1385.) "Complete withdrawal" from a multiemployer plan occurs when an employer permanently ceases to have an obligation to contribute to the plan or permanently ceases the operations for which it had an obligation to contribute to the plan. 29 U.S.C. § 1383; *In re Great Atlantic & Pacific Tea Co., Inc.*, 2013 WL 1310330, at *1 (S.D.N.Y. Mar. 31, 2013).

The Bankruptcy Court looked at the facts and found that post-petition contributions to

6

FELRA, for all employees in general *and* for the Debtors' employees in particular, exceeded post-petition benefit accruals. Thus, the Court found as a matter of fact that "[t]here was no unpaid consideration for benefits that vested during the post-petition period under the plan for all employees, not just the Debtors . . . ." (Appellees' Br. Appendix, Hr'g Tr. June 27, 2013 [Bankr. Dkt. No. 4271] 83:22-84:22.) As a result, there could be no administrative claim regardless of the method chosen to calculate it. A&P also argues that FELRA's entire brief is based on the misleading suggestion that A&P has somehow escaped withdrawal liability under ERISA. (Appellant Br. at 24.) That is not accurate. FELRA was awarded a claim for the full amount of A&P's withdrawal liability; the Bankruptcy Court held that FELRA's entire claim is "entitled to the consideration provided to all of the Debtors' non-priority unsecured creditors under the plan." (Appellees' Br. Appendix, Hr'g Tr. June 27, 2013 [Bankr. Dkt. No. 4271] 72:10-13.) Thus, A&P has not avoided and are not attempting to avoid any withdrawal liability. The only question before the Bankruptcy Court and now before this Court is whether FELRA met its burden to demonstrate that some portion of the withdrawal liability is entitled to administrative priority under the Bankruptcy Code, which would move FELRA ahead of A&P's other creditors. FELRA did not and cannot do so.

"Generally, debts which accrue prior to the bankruptcy proceeding are not administrative expenses, even if they are not payable until some date during the proceeding." *Amalgamated Ins. Fund v. William B. Kessler, Inc.*, 55 B.R. 735, 739 (S.D.N.Y. 1985). "Withdrawal liability . . . is imposed on employers withdrawing from multiemployer pension plans to make up for past failures by employers to fund fully pension plan benefits. Essentially, withdrawal liability is belated compensation for services provided before the start of bankruptcy proceeding. As such, a claim for withdrawal liability is not entitled to administrative expense status." *Id.* at 740.

7

"Appellant's proper claim, per *McFarlin's,* would not be for administrative expenses, but rather, for withdrawal liability—which is not entitled to administrative expense priority." *In re Hostess Brand, Inc.*, 499 B.R. 406, 414 (S.D.N.Y. 2013); *Matter of Cott Corp.,* 47 B.R. 487 (Bankr. D. Conn. 1984) (pre-petition amount of "withdrawal liability" imposed on debtor by ERISA was a general, unsecured claim). Thus, the Bankruptcy Court correctly found that appellant's withdrawal liability does not receive administrative expense priority.

FELRA cannot argue for alternative methods for the first time on appeal when it took the opposite position in the Bankruptcy Court. *See United States v. Braunig*, 553 F.2d 777, 780 (2d Cir. 1977) ("The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments available but not pressed below . . . waiver will bar raising the issue on appeal.") (internal citations omitted); *Route 21 Assocs. of Belleville, Inc. v. MHC, Inc.*, 486 B.R. 75, 83 (S.D.N.Y. 2012) *aff'd sub nom. In re Lyondell Chem. Co.*, 542 F. App'x 41 (2d Cir. 2013) ("The debtor argues that Route 21 has waived its right to make this argument, because Route 21 took the opposite position below and first made this argument on appeal to this Court . . . . Because of Route 21's shifting positions, its argument that the agreements were not executory is waived."); *Best Payphones, Inc. v. Manhattan Telecomms. Corp. (In re Best Payphones, Inc.)*, 432 B.R. 46, 60 (S.D.N.Y. 2010) *aff'd,* 450 F. App'x 8 (2d Cir. 2011) (argument waived where appellant failed to argue the theory before the bankruptcy court). The Bankruptcy Court properly concluded at trial that it was not required to consider any alternative calculations offered by A&P for purposes of illustration because FELRA had not met its burden to demonstrate that the administrative claim satisfied Second Circuit law. (Appellees' Br. Appendix, Hr'g Tr. June 27, 2013 [Bankr. Dkt. No. 4271] 62:2-22; 84:13–85:2.)

For the reasons stated herein, the judgment of the bankruptcy court is hereby affirmed, and the case is dismissed. The Clerk of the Court is respectfully directed to close the case.

Dated: August __8__, 2014
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge